MAPES, execútrix, *et al.* v. SNYDER *et al.*, appellants.

*Practice — marriage of female plaintiff pending suit — abatement — fraudulent conveyance — rights of grantee — consideration.*

Plaintiff, a woman, commenced an action and afterward married. The action was referred after issue was joined, and in the order of reference it was provided that the changed name of the plaintiff might be entered, without motion. At the trial before the referee, the defendant objected to proceeding, on the ground of plaintiff's marriage. The order of reference was produced and the proceedings continued in the cause, as originally entitled. Subsequently, an *ex parte* order was entered by the clerk, under the direction of plaintiff's attorney, substituting plaintiff's name after for her name before marriage. *Held,* that under section 121 of the Code, there was no abatement of the action by reason of marriage of the plaintiff, until it should be so ordered by the court, and no such order having been obtained the proceedings after the marriage were regular.

The defendants, in order to defraud creditors by voluntary deed, conveyed certain real estate to plaintiffs' intestate. Afterward they asked the intestate to reconvey the property to them, which he refused to do unless a mortgage for $1,200 was executed back to him. The mortgage was executed and he reconveyed the property. *Held,* that the fraudulent conveyance could not be impeached by defendants; the intestate was entitled to require the mortgage as a condition of reconveyance, and the consideration of the mortgage was valid.

APPEAL from a judgment in favor of plaintiffs, entered upon the report of a referee in an action to foreclose a mortgage. The facts appear sufficiently in the opinion.

*S. R. Ten Eyck,* for appellant.

*Franklin & Morris,* for respondent.

MULLIN, P. J. This action was brought to foreclose a mortgage made by the defendant, Hamilton J. Snyder, to Charles W. Snyder, bearing date the 24th of February, 1852, to secure the payment of the sum of $1,200 in twelve equal annual payments, with interest from the 1st of April, 1852. The mortgage was duly acknowledged and recorded.

It is recited in the mortgage that it was given for one-half of the purchase price of the premises described in it. Sardineaette Snyder,

wife of the mortgagor, was made a party defendant in the action. She and her husband appeared and put in answers denying the allegations of the complaint, and alleging that the mortgage was not given to secure any part of the purchase-money of the premises described in it, but, on the contrary, was given without consideration. That when it was given the defendant, Hamilton J., was not indebted to the mortgagee, but the latter was indebted to him.

In a third answer it was alleged that in the year 1858, the mortgagee, in consideration of his indebtedness to Hamilton and of his knowledge that it was without consideration, agreed to cancel and discharge the same.

In a fourth answer it was alleged that, in consideration of the release by Hamilton of an indebtedness of the mortgagee to him, the latter agreed to release and discharge said mortgage and the indebtedness of each to the other was agreed to be discharged.

Charles W. Snyder died, leaving a last will, in and by which he appointed his wife Emeline executrix thereof. The will was duly proved and the executrix took upon herself the duties of said trust.

The mortgage in question was found among the assets of the deceased, and she proceeded to foreclose the same.

The action for that purpose was commenced in the winter of 1868. After its commencement, and prior to the 27th of September, 1869, the executrix inter-married with one Mapes. By an order of the special term, made on the last-mentioned day, the issues joined in said cause were referred for trial to John E. Seeley, Esq., and in the same order it was provided that the husband of the said executrix might be made a party, if required so to be, by the practice of the court, without motion, and the real name of the executrix entered, if required.

On the 21st of June, 1870, plaintiff's attorney directed the clerk of Seneca county, in which the place of trial was, to enter an order *ex parte* that the name of Emeline Mapes should thereafter be substituted in this action for Emeline Snyder, and the order was entered accordingly.

The trial commenced before the referee, on the 2d of June, 1870. Before any evidence was given on said trial defendant's counsel objected to proceeding therein, because since the action was commenced the plaintiff had inter-married with one Mapes, and the action had not been revived or continued in her present name. The plaintiff's counsel then produced the order of reference above men-

tioned, and the referee overruled the objection of the defendant's counsel and proceeded to try the cause, and swore the witnesses in the cause as originally entitled.

The plaintiff put in evidence the mortgage described in the complaint, on which there was indorsed a payment of $184 as of the 20th of April, 1853, and rested.

The defendant, Hamilton J. Snyder, was then sworn as a witness, and was asked the following questions, viz.:

What was the the mortgage given for?

Was it given to secure the purchase-money of the land described in it?

How came the words "that it was given to secure the purchase-money of the premises" to be inserted in it?

Was there any consideration for the mortgage?

Were you indebted to the mortgagee at the time of the execution of the mortgage in any sum whatever?

Was not the mortgagee, in fact, indebted to you at the time of executing this mortgage in the sum of $600?

These questions were severally objected to by plaintiff's counsel, on the grounds, among others, that the witness was incompetent to testify, as the questions called for transactions with the mortgagee who was deceased. The objection was sustained and the questions were not allowed to be put. The defendant's counsel then offered to put the same questions to the witness in behalf of his wife, the other defendant. They were again objected to and rejected.

The parties then gave evidence tending to prove, and the referee finds did prove, that in December, 1839, the defendant, Hamilton J. Snyder, being very much embarrassed by debts, some of which were in judgment, and fearing that his creditors might seize and appropriate to the payment of their debts the interest his wife had in a farm of land which had descended to her from her father, they united in a conveyance of the interest of the wife in said land to the plaintiff's testator, for which conveyance no consideration whatever was paid by said grantee, but it was made for the sole purpose of hindering, delaying and defrauding the creditors of said Hamilton J. Subsequently Sardineaette, wife of said Hamilton, applied to said Charles to convey to her said land; but he declined to do so, unless she and her husband would give him a mortgage for $1,200.

The mortgage in question was given in pursuance of such demand, and upon no other consideration, and he (Charles) thereupon con-

veyed to the wife of Hamilton the share of the farm conveyed as above mentioned to him by Hamilton and his wife.

The premises described in the mortgage for $1,200 were purchased and paid for by Hamilton J. Snyder, but were conveyed to him and said Charles jointly by the requirement of the latter, who paid nothing for the interest so conveyed.

The premises so conveyed were paid for by the conveyance to the grantors of a house and lot that Hamilton J. owned and conveyed to Charles, for the purpose of hindering, delaying and defrauding his creditors. Charles, at the request of Hamilton, conveyed the house and lot in payment of the premises described in the mortgage, but before he would do so, he required the conveyance of said premises to be made to himself and Hamilton jointly, and it was so done.

When the mortgage in question was given, and as a part of the transaction Hamilton J. gave to Charles a receipt, dated February 24, 1852, in full of all demands, accounts and claims he had against him.

The referee further finds, that the mortgage was not given for the purchase-money of the premises therein described.

Judgment of foreclosure was ordered as against Hamilton J., but the complaint was dismissed as to his wife, with costs, and from that judgment Hamilton J. appealed.

The question to be first considered in this case is, whether the referee had any power to proceed and try the cause after the marriage of the plaintiff therein.

By the practice in the court of chancery, before the Code was enacted a suit abated on the marriage of a female plaintiff. To entitle her to proceed in the action it must be revived by a bill of revivor. *Quackenbush* v. *Leonard*, 10 Paige, 131. If proceedings were had in the cause after the marriage and before the revivor, they were irregular, and would be set aside on motion. 1 Barb. Ch. Pr. 676–7. But such proceedings were not utterly void. Hence the chancellor in the case cited, *supra*, held that if there was a decree in her favor, the defendant was bound by it, and could not afterward urge the objection that the suit had abated by her marriage. In the case cited the court of errors had affirmed a decree of the chancellor in favor of the plaintiff, who had married before the affirmance of the decree, and before the decree was revived, and the chancellor held the decree was not only not void, but that it must be

carried into effect in his court, after the proper parties had been brought in.

Section 121 of the Code provides that at any time after the death, marriage or other disability of the party plaintiff, the court in which the action is pending, upon notice to such persons as it may direct, and upon application of any person aggrieved, may in its discretion order that it be deemed abated, unless the same be continued by the proper parties within a time to be fixed by the court, etc., etc. Under this section there is no abatement by reason of the marriage of the plaintiff, until it is so ordered by the court. In this case no such order has been obtained, and hence the proceedings after the marriage were regular.

The questions put to the witness, Hamilton J. Snyder, as to the consideration, etc., of the mortgage, could not be answered without detailing transactions between him and the plaintiff's testator; and this he could not be permitted to do, under section 399 of the Code If there were any matters which could be proved in answer to either of said questions, without violating the section referred to, it was the duty of the defendant's counsel to disclose them, so that the party and referee might be able to determine whether they were admissible; not making such disclosure, the questions were properly overruled.

There were several questions put to the witnesses similar to those just considered, which were incompetent on the same grounds.

As Mrs. Snyder has not appealed, the rulings affecting her rights are not before us, and cannot therefore be considered. In one instance, and it may be in several, the referee reserved his decision as to the competency of evidence, and it is incorporated in the case, and we must assume it was received, and the objections to it overruled, and as the objections were made by the plaintiff, she cannot complain of the rulings.

Mrs. Snyder was asked whether she had a conversation with Charles in relation to the partnership between him and her husband, and his being indebted to him, and she was asked to state what the conversation was. The question was objected to on the ground that she was not competent to testify, and because no bill of particulars had been served.

Mrs. Snyder was a competent witness for or against her husband. Laws of 1867, chap. 887, § 1; *Wehrkamp* v. *Willett*, 1 Keyes, 250; *Card* v. *Card*, 39 N. Y. 317. I am unable to understand the mean-

ing of the other ground of objection, to wit: That no bill of particulars had been served. The effort of the defendant upon the trial was to prove that there was no pecuniary consideration for the mortgage arising from any indebtedness between the parties thereto. Such evidence was clearly competent, and its competency did not depend in any degree on the delivery or non-delivery of a bill of particulars. But as the referee has found that there was no consideration for the mortgage, it is unnecessary to discuss the question further. The admission of the evidence has done the defendant no harm.

This brings me to the principal question in the case, and that is, whether the mortgage was a valid and available security in the hands of Charles or his executrix, against the defendant Hamilton J. Snyder. The referee finds that the contract of Mrs. Snyder was conveyed to Charles, for the purpose of cheating and defrauding the creditors of her husband. That conveyance was executed in 1839; at that time the husband had a tenancy by the curtesy initiate in the lands of the wife. This estate passed by his deed; the fee which was in the wife passed by the same deed, to which she was a party.

A deed, however fraudulent it may be, is valid as between the parties to it, and it is only the persons it was made to defraud that can assail it and set it aside. A court of equity will not, where the fraudulent purpose is disclosed, give relief to either of the parties to the deed who are implicated in the fraud. 1 Story's Eq. Jur., §§ 298, 299, and notes; *Sweet* v. *Tinslar*, 52 Barb. 271, and cases cited. It leaves them as it finds them. See same cases.

It follows that neither the defendant nor his wife could have maintained an action to recover back the land belonging to them from Charles or his legal representatives. On the delivery of that conveyance, Charles became owner in fee of their share of the farm described in the deed, and could hold it as against all the world except the creditors of Hamilton. Being owner, he could sell it to Hamilton or his wife upon such terms and conditions as they could agree upon, and he did sell and convey it to the wife for the amount secured by the mortgage. A sale for that sum to any third person would have been valid, and no reason is perceived why it could not be made to the defendants, or either of them.

It was undoubtedly grossly unfair and unjust for him to demand any sum of money for conveying back property transferred to him

upon the implied, if not the express, assurance that he would discharge himself of the trust whenever requested so to do; but the defendants took the hazard of a breach of faith, and they must submit to it.

The giving of the mortgage was no part of the original fraudulent arrangement, and decreeing foreclosure of it is not carrying that arrangement into effect.

The referee has not found any agreement by the testator founded on a valid consideration to satisfy and discharge said mortgage, nor is there any finding of an accord and satisfaction. This court cannot find facts which the referee has either omitted or refused to find.

To give relief to defendants because the testator admitted that it would be dishonest to enforce the mortgage, and he, for that reason, proceeded to cancel it, would be to give the defendant the benefit of the fraudulent arrangement to which he was a party, and that the court cannot and will not do.

The judgment must be affirmed, with costs.

*Judgment affirmed.*