Haight, J.
Harriet T. Sedgwick died in Monroe county on the 26th day of May, 1887, leaving a last will and testament, in which she appointed the plaintiff sole executor. The will has been duly admitted to probate. For some years prior to her death she was the owner of certain shares of stock of the Delaware & Hudson Canal Company, of the par value of $1,500. For about two years prior to her death she resided with the defendant, Delia J. Gott. She was of the age of 87 years at the time of her death, and had been sick and infirm for some time prior thereto. A short time prior to her death she transferred the shares of stock to the defendant, who caused the same to be sold, and deposited the money in the bank, to her own credit. This action was brought by the plaintiff to set aside such transfer, for an accounting, and to recover the money on deposit in the bank, or so much thereof, as may remain due upon such accounting. A temporary injunction was obtained restraining the defendant from drawing the money from the bank, and the bank from paying the same over to her. The case was noticed for trial at the Monroe equity term, and on the opening of that court the defendant moved to strike the cause from the calendar on the ground that it was triable by jury. The court denied the motion, and thereafter the case was moved for trial upon a regular call of the calendar, whereupon the counsel for the defendant objected to the trial of the case, and demanded the right to a trial by jury. The court overruled the objection, and an exception was taken to such ruling by the defendant. This action is something more than for the recovery of damages resulting from the conversion of property. The bank in which the money was deposited was made a party defendant, and the plaintiff seeks to set aside the transfer, and follow the money that was deposited by the defendant, Gott, in the bank, and recover from the bank the money so deposited. The defendant, Gott, had been taking care of Mrs. Sedgwick during her sickness, having charge of the bank-books, and the purchases that were necessary for the deceased during her sickness. An accounting was therefore demanded, in order to determine the amount that had been expended by the defendant, Gott, in her care of the deceased. The case *520 was consequently brought within the jurisdiction of the court of equity, and the motions for the trial by jury were properly overruled.
The transfer of the stock in question was sought to be set aside upon the ground that at the time of the transfer the deceased was so weak in body and mind as to be incapable of transacting business, and that she was unduly influenced by the defendant. Her mental condition, therefore, became an important issue in the case. "Upon the trial, Dr. Frank A. Winne was sworn as a witness for the plaintiff, and testified that he was a regularly licensed physician, duly authorized to practice medicinein this state; that he treated Mrs. Sedgwick for five or six years before her death, commencing in August, 1882; that he treated her continuously down to the time of her death; that during the last year of her life there were periods when he saw her every day for a week or two, sometimes twice a day, and then there might be a period of several weeks in which he did not see her; that he made some visits which were not professional, and for which he made no charge. He was then asked: “AVas there a time when you noticed any change in Mrs. Sedgwick in regard to her memory?” This was objected to as incompetent under section 884 of the Code. The objection was overruled, and an exception taken. He answered that he did. He was then asked: “ When did you first notice that change? Answer. I should say about a year previous to her death. Question. What was the change?” ■ Objected to as incompetent under section 834 of the Code. Objection overruled, to which ruling defendants counsel excepted. “A. The change was that she did not recollect things as she had formerly done. Q. Can you recall any instance of that kind?” Same objection, ruling, and exception. “A. I could notice in this manner: that along at the first of my treatment she was very particular to ask about what I gave her, and she was very particular to recollect them. In the latter part of her life she would not remember from one visit to another what I was giving her. Q. State whether the defect in memory increased or decreased from the time you first began to notice it.” Same objection, ruling, and exception. “A. It increased, to the best of my judgment. ” Much other evidence of a similar character was given by the physician, but enough has been stated to show its bearing upon the main question at issue in the case. Section 834 of the Code of Civil Procedure provides that “a person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.” Section 836 provides that “this section applies to every examination of a person as a witness, unless expressly waived by the patient.” Ho claim is made that there was any waiver on the part of the patient. In the case of Grattan v. Insurance Co., 80 N. Y. 281, it was held that the statute prohibiting a physician from disclosing any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to prescribe, includes information received through the sense of sight as well as that communicated through the ear. An examination of the patient is not required to be performed in order to exclude information so derived, nor is it required that it shall be shown in the first instance by formal proof that the information was necessary to enable the physician to prescribe. In the case of Renihan v. Dennin, 103 N. Y. 578, 9 N. E. Rep. 320, it was held that to bring the case within the statute it is sufficient that the physician attended as such upon the patient, and obtained his information in that capacity. It is sought to justify this evidence upon the theory that the physician may have spoken in reference to information derived at the visits that were not professional, and for which he has made no charge; but it would appear from the answers given to the questions objected to that the information was derived at the time that he was prescribing for her as a physician, for one. of the instances recalled by him was that in the latter part of her life she could not remember from one visit to another the medicine that he *521 was giving her. vWe consequently are of the opinion that the evidence was within the prohibition of the Code.
It is further claimed that, even though the evidence was incompetent, it should be disregarded by this court, on review, as doing no harm; but we are unable to see that it did no harm. An earnest argument is presented on behalf of the appellant, contending that the evidence does not authorize the finding that she was so weak and enfeebled in mind at the time of making the transfer as to be incapable of transacting business; and a very earnest argument is presented on behalf of the respondent urging that there is sufficient evidence to sustain such finding. The testimony of the attending physician as to the mental condition of the patient would ordinarily have great weight upon the court charged with the duty of determining the fact, for no other person would be expected to have as accurate and correct information upon the subject as the physician. It is possible, therefore, that his testimony was that upon which the trial court chiefly relied.
Mary L. Maynard was a niece of the deceased, and one of the legatees named in the will. It appeared that there was not sufficient property with which to pay the debts of the deceased, aside from that derived from the sale of the stock in question. She was sworn as a witness on behalf of the plaintiff, and under objection testified to a change that took place in the deceased affecting her memory, etc., and as to her frail and feeble physical condition. In the case of Freeman v. Spalding, 12 N. Y. 373, it was held that, under section 399 of the Code of Procedure, a residuary legatee named in a will is a competent witness for the executor in a suit to recover moneys claimed to be due the estate; that such legatee is not the person for whose immediate benefit the action is prosecuted, within the meaning of the section. That section declared that the provision of a former section that no person offered as a witness shall be excluded by reason of his interest in . the event of the action should not apply to a party to the action, nor to any person for whose immediate benefit it is prosecuted or defended. It will be observed that the provisions of the Code of Procedure as it then stood are quite different from those incorporated in section 829 of the Code of Civil Procedure. That section provides that “upon the trial of an action * * * a person interested in the event * * * shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against, * * * or a person deriving his title or interest from, through, or under, a deceased person.” The provision as it now stands is that a party or person “interested in the event,” etc.; whereas, under the former provision, it was “a person for whose immediate benefit the action was prosecuted.” An executor bringing an action to recover money due the estate does not prosecute the action for the immediate benefit of a legatee under the will, for no part of the recovery may ever reach the legatee. It may be consumed in the payment of the debts of the testator. But under section 829 of the Code of Civil Procedure any person interested in the event of the action is disqualified. A legatee may be interested, especially if it appears, as it does in this case, that there are debts outstanding unpaid, and that the estate aside from that sought to be recovered in the action is insufficient to pay such debts. It appears to us that this question is disposed of by the case of Holcomb v. Holcomb, 95 N. Y. 316, in which case it was held that in an action brought by an administrator the next of kin are interested in the event of that action within the meaning of the Code excluding witnesses from testifying to personal transactions or communications between themselves and the deceased. The evidence which was held incompetent in that case was of the same character as that which was admitted in this case. It appears to us that that case is decisive of the one here under consideration. To the same effect is the case of Scott v. Scott, 13 N. Y. St. Rep. 202. It follows that the evidence was incompetent, and should have been excluded. It bore upon the main question at is *522 sue. and may have affected the result. The judgment should be reversed, and a new trial ordered, costs to abide the final award of costs. So ordered. All concur.